IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT W. LETTENMAIER, an
individual, LESLIE A. LETTENMAIER,
an individual, and ALPHA
FOUNDATION,                                               No.  CV-11-156-HZ

             Plaintiffs,

     v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION, MORTGAGE
ELECTRONIC REGISTRATION                        OPINION & ORDER
SYSTEMS, INC., WELLS FARGO
BANK, N.A., and NORTHWEST TRUSTEE
SERVICES, INC., a Washington
Corporation,

             Defendants.

1 - OPINION & ORDER

Joseph A. Yazbeck, Jr.
YAZBECK, CLORAN & BOWSER, PC
1300 S.W. Fifth Avenue, Suite 2750
Portland, Oregon 97201-5617

      Attorney for Plaintiffs

Teresa M. Shill
ROUTH CRABTREE OLSEN, P.C.
11830 S.W. Kerr Parkway, Suite 385
Lake Oswego, Oregon 97035-1249

      Attorney for Defendant Northwest Trustee Services, Inc.

HERNANDEZ, District Judge:

      This action arises out of a non-judicial foreclosure sale of residential real property.

Plaintiffs Robert and Leslie Lettenmaier and ALPHA Foundation challenge the foreclosure and

contend that defendants violated other federal laws in the foreclosure process.  Presently,

defendant Northwest Trustee Services, Inc. (NWTS), moves to dismiss the claims against it.  I

grant the motion in part and deny it in part.

## BACKGROUND

      The Lettenmaiers received a loan from M&T Mortgage Corporation in the amount of

$224,000, secured by a Deed of Trust against real property in Clackamas County, Oregon.  Ex. 1

to Taggart Decl. (Deed of Trust referring to promissory note signed by Lettenmaiers).[1]  The Deed

---

[1] NWTS moves to dismiss the claims against it under Federal Rule of Civil Procedure
12(b)(6), but it relies on documents outside of the Complaint in support of its motion.  NWTS
requests that I take judicial notice of the documents.  It is appropriate to consider facts not in a
complaint if they may be judicially noticed under Rule 201, are incorporated by reference by the
plaintiff, or are matters of public record.  Dunn v. Castro, 621 F.3d 1196, 1204 n.10 (9th Cir.
2010); Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).
      I consider the Deed of Trust in resolving the motion to dismiss because it is a matter of
public record, and it is appropriate for judicial notice.  Any other documents submitted by NWTS
and cited in this Opinion are also matters of public record and appropriate for judicial notice.

of Trust was executed December 7, 2006, and recorded in Clackamas County on December 12, 2006.  Id.  The "Borrower" is defined as the Lettenmaiers.  Id.  The "Lender" is defined as M&T Mortgage Corporation.  Id.  The "Trustee" is Ticor Title Insurance Company.  Id.

The Deed of Trust is noted to be a "Security Instrument" and defendant Mortgage Electronic Registration Systems, Inc. (MERS), is noted to be the "Grantee of this Security Instrument."  Id.  MERS is further defined to be a "separate corporation that is acting solely as a nominee for Lander and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument**."  Id.

Additionally, the Deed of Trust provides that the "[l]ender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law."  Id. at p. 13.

On July 2, 2007, the Lettenmaiers were the grantors of a Line of Credit Trust Deed in favor of lender National City Bank.  Ex. 2 to Taggart Decl.  The trustee was Pacific Northwest Title.  Id.  The maximum obligation limit was $30,000.  The deed was recorded in Clackamas County on July 9, 2007.  Id.

On September 24, 2009, a document entitled "Full Reconveyance (Without Relinquishment of Debt)" was recorded in Clackamas County.  Ex. 3 to Taggart Decl.  It states, in part, that

> trustee Ticor Title Insurance Company, under that certain Deed of Trust, dated December 6, 2006, . . . , having been notified by the Trustor of the real property listed below, to grant all authority to Trustee, to reconvey, reciting that all of the obligations secured by the Deed of Trust may not have been fully satisfied, but releasing the trust property as security for the obligation as per tacit agreement for

3 - OPINION & ORDER

non-compliance penalty found in the Qualified Written Request/Demand in the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e), mailed on 07/02/09 and received on 07/20/09, and Trustor's NOTICE AND CONTRACT dated 07/10/09 and received by Lender/Trustee on 08/1/09.

Ex.3 to Taggart Decl.  This document further states that

IN WITNESS WHEREOF, WESLEY REAM, by Power of Attorney/Tacit Agreement by Northwest Trustee Services, Inc., as Trustee has caused its Corporate name affixed by acting Trustee, being duly authorized under an Unlimited Power of Attorney, on the date shown in the acknowledgment certificate below.

Id.  It is dated September 24, 2009, and signed by "Wesley Ream" for Ticor Insurance Company "as Trustee with Power of Attorney by Tacit Agreement."

The document also states that recording was requested by Ticor Title Insurance Company. Id.  It requests that after recording, it should be mailed to:  "SafeHaven Foundation," C/O:  R.J. Humpal, in Calimesa, California.  Id.  It was recorded in Clackamas County on September 24, 2009.  Id.

On the same date, and at the same time, an almost identical document was recorded in Clackamas County.  Ex. 4. to Taggart Decl.  This is also entitled a "Full Reconveyance (Without Relinquishment of Debt)."  Id.  This document relates to the second trust deed on the line of credit and was signed by Wesley Ream for Pacific Northwest Title as "Trustee with Power of Attorney by Tacit Agreement."  Id.  It was also to be returned to R.J. Humpal in Calimesa, California upon recording.  Id.

The following day, September 25, 2009, the Lettenmaiers executed a Warranty Deed in which they purported to grant a deed in the property subject to the Deed of Trust, to plaintiff ALPHA Foundation and R.J. Humpal, for $100,000.  Ex. 5 to Taggart Decl.  The document

4 - OPINION & ORDER

notes that a 95% interest in the property was conveyed to ALPHA Foundation, and a 5% interest was conveyed to Humpal.  Id.  It requests that after recording, the document be mailed to ALPHA Foundation, with an Oregon City, Oregon address.  Id.  The name "Wes Ream" appears in handwriting under the address for ALPHA Foundation.  Id.  The document was recorded on September 25, 2009.  Id.

On December 3, 2009, Kathy Taggart, acting as Vice-President of MERS, assigned the Deed of Trust to defendant Wells Fargo.  Ex. 7 to Taggart Decl.  This assignment was recorded in Clackamas County on December 4, 2009.  Id.

Previously, in May 2006, Wells Fargo granted Taggart a limited power of attorney for executing, acknowledging, recording, or delivering a Notice of Default and Election to Sell, and for appointing or substituting trustees where Wells Fargo was the original or substituted beneficiary or servicing agent for the beneficiary.  Ex. 8 to Taggart Decl.  This document was recorded in Clackamas County on May 24, 2006.  Id.

On December 3, 2009, Taggart, acting as "Attorney-in-Fact" for Wells Fargo, appointed NWTS as the successor trustee to Ticor Title Insurance Company.  Ex. 9 to Taggart Decl.  This document was recorded in Clackamas County on December 4, 2009.  Id.

On December 4, 2009, a Notice of Default and Election to Sell (NODES) was recorded in Clackamas County.  Ex. 10 to Taggart Decl.  It refers to the Deed of Trust and the original parties to the Deed of Trust, and notes the subsequent assignment to Wells Fargo.  Id.  The NODES also recites that the Lettenmaiers were in default on their obligations, beginning August 1, 2009.  Id.

On December 7 and 8, 2009, NWTS first mailed a Notice of Foreclosure, required by Section 20 of Chapter 19, Oregon Laws 2008, and the Trustee's Notice of Sale (TNOS), to the

5 - OPINION & ORDER

Lettenmaiers, ALPHA Foundation, and Humpal, by first class and certified mail, return receipt requested.  Taggart Decl. at ¶ 10.  An "Affidavit Package," containing these documents, and others, was recorded in Clackamas County on March 25, 2010.  Ex. 11 to Taggart Decl.

The non-judicial foreclosure process culminated in the sale of the property on April 12, 2010.  Taggart Decl. at ¶ 14.  The Trustee's Deed was issued to defendant, Federal Home Loan Mortgage Corporation (FreddieMac), and recorded in Clackamas County on April 19, 2010.  Ex. 12 to Taggart Decl.  The Trustee's Deed states that the property was sold at public auction to FreddieMac for $196,000, with FreddieMac "being the highest and best bidder at the sale."  Id. This document was recorded in Clackamas County on April 19, 2010.  Id.  An Amended Trustee's Deed was recorded in Clackamas County on July 13, 2010.  Ex. 13 to Taggart Decl.[2] The Amended Trustee's Deed states that the property was sold "to the beneficiary" for $196,000, with "the beneficiary being the highest and best bidder at the sale," and the beneficiary then "designated Federal Home Loan Mortgage Corporation as Grantee hereunder."  Id.

On May 25, 2010, FreddieMac filed a Forcible Entry & Detainer (FED) action against the Lettenmaiers who were still living on the property.  Ex. C to Shill Decl. (Clackamas County Docket Sheet for Case No. FE10081).  The Lettenmaiers filed an Amended Answer on August 16, 2010.  Id.; Ex. A to Shill Decl.  There, the Lettenmaiers asserted that FreddieMac was not entitled to possession because (1) the eviction notice was wrong; (2) the trustee's sale was invalid because FreddieMac was not present to bid on the property and was not the beneficiary of record at the time the Trustee's Deed averred the foreclosure sale took place, and (3) the trustee's sale

---

[2] Taggart states that the Amended Trustee's Deed was recorded on August 16, 2010, Taggart Decl. at ¶ 14, but the stamp on the document shows a date of July 13, 2010.  Ex. 13 to Taggart Decl.

was invalid because no foreclosure sale was conducted.  Ex. A to Shill Decl.

A General Judgment was filed on October 4, 2010.  Ex. B to Shill Decl.  It recites that the case was tried on September 1, 2010, before the Honorable Douglas V. Van Dyk.  Id.  The Judgment was issued by the Clackamas County Circuit Court.  Id.  The Court made two relevant findings:  (1) that a tenancy was created under which Robert Lettenmaier, former owner of the property, became a tenant in the property and as a tenant, Robert Lettenmaier had not received sufficient notice to terminate his tenancy; and (2) that the underlying trustee's sale was valid with regard to the defenses asserted in defendants' Amended Answer, and FreddieMac is the title owner of the property.  Id.

On January 19, 2011, FreddieMac initiated a second FED action against the Lettenmaiers in Clackamas County Circuit Court.  Ex. D to Shill Decl. (docket sheet for case number FE110126).  The Lettenmaiers removed the case to this Court on February 9, 2011.  On March 18, 2011, I granted FreddieMac's motion to remand the case back to state court.

## STANDARDS

On a motion to dismiss, the court must review the sufficiency of the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  American Family Ass'n, Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative

level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. (citations and footnote omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct." Id.

DISCUSSION

Plaintiffs bring three claims against NWTS: (1) violation of the Oregon Trust Deed Act, Oregon Revised Statutes § (O.R.S.) 86.705-86.795; (2) breach of contract; and (3) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (FDCPA). NWTS moves to dismiss all three claims.

I. Oregon Trust Deed Act

Plaintiffs contend that NWTS violated Oregon's Trust Deed Act when MERS purported to assign the Deed of Trust to Wells Fargo. Plaintiffs argue that any attempt by MERS to assign the Deed of Trust to Wells Fargo is invalid because MERS was only a nominee for the lender and was not the intended beneficiary of the Deed of Trust. As a result, if the assignment to Wells Fargo was not valid, NWTS could not act on behalf of Wells Fargo to foreclose on the Deed of Trust. Plaintiffs also argue that Taggart had no authority to sign the assignment of the Deed of Trust on behalf of MERS.

8 - OPINION & ORDER

NWTS argues that MERS is a valid beneficiary, that Taggart had authority to make the assignment, and that regardless, any violations of the Oregon Trust Deed Act may not be pursued in this action because of the doctrine of res judicata/claim preclusion. Because I agree with NWTS on the claim preclusion issue, I decline to address NWTS's other arguments.

To determine the preclusive effect of a state court judgment, the court looks to state law.

Henrichs v. Valley View Dev., 474 F.3d 609, 615 (9th Cir. 2007). In Oregon,

> [t]he doctrine of claim preclusion prohibits a party from relitigating the same claim or splitting a claim into multiple actions against the same opponent. The rule forecloses a party who has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance. A "claim" is defined broadly as a group of facts which entitled the plaintiff to relief. In deciding whether a group of facts is part of the same claim, we inquire whether the transactions were related in time, space, origin, or motivation, and whether they form a convenient unit, as well as whether they were substantially of the same sort and similarly motivated.

Ram Technical Servs., Inc. v. Koresko, 240 Or. App. 620, 630, 247 P.3d 1251, 1257 (2011) (internal quotation omitted). "To prevail on the basis of claim preclusion, a defendant must establish that the claim sought to be precluded is of such a nature as could have been joined in the first action." Clemente v. State, 227 Or. App. 434, 437, 206 P.3d 249, 252 (2009) (internal quotation omitted).

NWTS argues that the claims in plaintiffs' first claim for relief in this case are precluded by the Judgment issued by Judge Van Dyk in the first FED action. NWTS contends that the FED action and this case involve the same "claim, demand, or cause of action," namely, whether the trustee's sale was conducted in accordance with the Oregon Trust Deed Act. Because the Clackamas County Circuit Court has issued a final judgment on the same or similar claims as the Lettenmaiers bring here, NWTS contends that the claim in this action must be dismissed.

9 - OPINION & ORDER

Plaintiffs contend that the FED action cannot preclude plaintiffs' first claim because the only issue before the Clackamas County Circuit Court in the FED action was possession, not title. In support, plaintiffs rely on Lawton v. Simpson, 133 Or. App. 489, 891 P.2d 1371 (1995).

In Lawton, the plaintiff brought an action for fraud, breach of contract, specific performance, conversion, and constructive trust, alleging that he and the defendants had agreed that the defendants would assist him in obtaining refinancing for real property, that in exchange the plaintiff would transfer title to the defendants, and that the defendants agreed to later return the title to the plaintiff. 133 Or. App. at 491, 891 P.2d at 1372. However, before the plaintiff filed the action, the defendants had brought an FED action against the plaintiff for possession of the property. The plaintiff defended against the FED complaint on the grounds that (1) the defendants had defrauded him, (2) he, not defendants owned the real property, and (3) he had an enforceable contract to purchase the property. The FED court found in favor of the defendants and entered a judgment that included findings against the plaintiff on the grounds that he had asserted. Id.

In the later civil case, the defendants argued that the FED judgment barred the plaintiff from relitigating his claims. The trial court agreed with the defendants, but the court of appeals reversed. As the court explained, at the time the FED action at issue in Lawton was adjudicated, then O.R.S. 46.060(1)(e) gave Oregon district courts exclusive jurisdiction of FED proceedings. Id. But, at the same time, the statutory scheme did not give district courts jurisdiction to determine title. Id. Thus, although the "plaintiff's defenses raised issues affecting title," a district court judgment on an FED action was "without effect as to title." Id. (citing O.R.S. 46.084(1)).

Because the district court did not have jurisdiction under Oregon statute to "render a

judgment that in any way affected title," and because the district court FED judgment had not

been docketed in the circuit court pursuant to O.R.S. 46.084(2), the plaintiff was not precluded

from bringing the claims in the subsequently filed civil action.  Id. at 492-93, 891 P.2d at 1372-

73.

After Lawton, the Oregon Legislature abolished district courts and transferred all

jurisdiction, authority, powers, functions, and duties of the district courts to the circuit courts.

1995 Or. Laws  c.658, §§ 1-3.  The legislature repealed the particular statutes cited by the Lawton

court regarding the lack of district court jurisdiction to issue a judgment affecting title to real

property.  Id. at § 127.

The FED action in the instant case was tried in Clackamas County Circuit Court which

had jurisdiction to issue a judgment as to the title of the property in question.  Lawton is

distinguishable.  See Schmidt v. Hart, 237 Or. App. 412, 420-21, 241 P.3d 329, 334-35 (2010)

("A circuit court's findings in the context of an FED proceeding are entitled to preclusive effect";

because, in the FED proceeding, the plaintiff was entitled to present defenses that related to the

issue of possession, she could not raise claims in separate, subsequent proceeding), rev denied,

350 Or. 130 (2011); Perkins v. Conradi, 151 Or. App. 585, 588-90, 950 P.2d 380, 381-82 (1997)

(judgment issued by circuit court in FED action precluded plaintiff's challenge to title of forty

acres in civil case when plaintiff had the opportunity to assert his title claim as to entire forty

acres in the FED action, but chose to challenge title as to only five acres), modified, 154 Or. App.

439, 959 P.2d 1013 (1998).

In the first FED action against them, the Lettenmaiers either actually challenged, or had

the opportunity to challenge, the very same title issues they raise here in their first claim for relief

under the Oregon Trust Deed Act.  The arguments and defenses they made in the FED action were reduced to a judgment issued by a circuit court, which had jurisdiction to adjudicate proper title to the property.  As in Schmidt and Perkins, the Lettenmaiers are precluded from litigating the claim in this subsequent action.

One more point requires discussion.  NWTS was not a party to the FED action.  But, claim preclusion applies to parties in "privity" with parties to the earlier action.  Bloomfield v. Weakland, 339 Or. 504, 510-11, 123 P.3d 275, 279 (2005).  "[P]rivity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include the other within the res judicata.'"  Id. at 511, 123 P.3d at 279 (quoting Wolff v. Du Puis, 233 Or. 317, 321, 378 P.2d 707 (1963)).

There are "three general categories of parties that may be in privity with parties to earlier litigation:  (1)  those who control an action though not a party to it; (2) those whose interests are represented by a party to the action; and (3) successors in interest to those having derivative claims."  Secor Invs,, LLC v. Anderegg, 188 Or. App. 154, 167, 71 P.3d 538, 545-46 (2003) (internal quotation omitted).

NWTS falls into the second category.  NWTS and FreddieMac both have an interest in FreddieMac being the rightful holder of title to the property.  NWTS's interests are aligned with FreddieMac's and were protected by FreddieMac in the first FED action where the Lettenmaiers challenged the validity of the foreclosure based on arguments that went to the ultimate issue of whether FreddieMac properly held title.  Thus, NWTS's interests were represented by a party to the FED action and the doctrine of claim preclusion applies.  I grant NTWS's motion to dismiss plaintiffs' first claim for relief.

12 - OPINION & ORDER

II.  Breach of Contract

Plaintiffs allege that NWTS violated the Deed of Trust because the foreclosure was not conducted in the manner prescribed by applicable law, meaning that NWTS breached the Deed of Trust by foreclosing without authority to do so because MERS was not a valid beneficiary. See Compl. at ¶ 101; Pls' Resp. to Mtn to Dismiss at p. 10 ("Plaintiffs have alleged that NWTS breached the contract by foreclosing when it did not have the authority to do so because MERS is not a valid beneficiary of the Deed of Trust.").

NWTS moves to dismiss this claim because (1) it is precluded by the prior adjudication in the FED action; (2) NWTS was not a party to the Deed of Trust; or (3) plaintiffs fail to state a claim for economic harm arising out of negligent conduct.  The breach of contract claim does not raise a claim of negligence and thus, that argument by NWTS is of no consequence.

The breach of contract claim is grounded in the allegation that the Deed of Trust requires foreclosures to be conducted according to applicable law, which, when read in the context of the entire Complaint, must refer to the Oregon Trust Deed Act.  See Ex. 1 to Taggart Decl. at pp. 2, 13 (Deed of Trust defines "applicable law" as "all controlling applicable federal, state and local statutes . . . "; requires notices and other procedures incident to a foreclosure sale to be performed as prescribed by applicable law).  Plaintiffs seek both declaratory relief and damages in regard to this claim.  Compl. at ¶ 103 (seeking a judgment that NWTS did not have authority to foreclose); ¶ 105 (seeking actual damages, attorney's fees, and costs); see also Compl. at p.16 (prayer for relief for breach of contract claim seeks a judgment that NWTS breached the note and Deed of Trust by failing to follow procedures provided in accordance with applicable law, and actual damages).

To the extent the breach of contract claim effectively challenges the title of the property, I agree with NWTS that the claim is precluded by the judgment in the FED action.  Implicit in the declaratory relief sought by plaintiffs is a declaration that the Oregon Trust Deed Act was violated because of the alleged improper assignment of an interest by MERS.  But, this is the type of challenge to FreddieMac's title that plaintiffs actually raised, or could have raised, as an affirmative defense in the FED action.  For the reasons explained in the previous section, plaintiffs are precluded from relitigating claims that challenge FreddieMac's title.  Because NWTS is in privity with FreddieMac, the breach of contract claim against NWTS is precluded to the extent it seeks a declaration which invalidates FreddieMac's title to the property.

As to the damages portion of the breach of contract claim, to the extent it is not based, explicitly or implicitly, on a challenge to FreddieMac's title, it is not precluded by the FED action.  The FED action addressed the issue of possession which carried with it an adjudication of the defenses raised by plaintiffs concerning FreddieMac's title.  No claim for damages was brought or at issue, nor would a separate claim for damages have been appropriately allowed as a counterclaim.  See O.R.S. 105.132 (limiting ability of a defendant in an FED action to bring a counterclaim unless otherwise provided by statute).

NWTS alternatively argues that the claim should be dismissed because NWTS was not a party to the Deed of Trust.  Plaintiffs contend that because NWTS is the successor trustee, having been appointed trustee in place of the original trustee Ticor Title Insurance Company, NWTS is an assignee of Ticor's rights and stands in Ticor's shoes.  See State ex rel. Adult & Family Servs. Div. v. Lester, 45 Or. App. 389, 392, 608 P.2d 588, 590 (1980) ("An assignee stands in the shoes of his assignor").  Plaintiffs' argument assumes that Ticor was a party to the Deed of Trust and

14 - OPINION & ORDER

that the appointment of a successor trustee is a transfer of contractual rights.  See Imperial Carpet

Mills, Inc. v. Hawley, 262 Or. 277, 285, 497 P.2d 658, 661 (1972)  (effect of an assignment is a

transfer of rights by the assignor); Springfield Int'l Rest. Supply, Inc. v. Sharley, 44 Or. App. 133,

140, 605 P.2d 1188, 1192 (1980) (assignment in the legal sense means an immediate,

unconditional transfer of rights); Nelson v. Adult & Family Servs. Div., 42 Or. App. 865, 871,

601 P.2d 899, 902 (1979) (assignment operates to transfer assignor's rights to assignee).

   NWTS contends that its duties under the contract are ministerial, consisting of releasing

the Deed of Trust when instructed following the payoff of the mortgage loan, and foreclosing on

the property in the event of default pursuant to the Trust Deed Act.  It notes that it did not bargain

for nor benefit from the contract and has no rights under the contract.  It is not a party to the

promissory note and did not execute either the promissory note or the trust deed.  I agree with

NWTS.

   The trustee under a Deed of Trust is not a party to the underlying promissory note or to

the Deed of Trust. The promissory note is an agreement between the lender and the borrower.

The Deed of Trust is a security instrument securing performance of the note.  The trustee is

appointed by the parties to act on behalf of both the lender and the borrower.  The trustee is not a

signatory to the Deed of Trust and neither provides nor is provided with, any consideration.

   Under Oregon law, a contract is made when one person makes an offer to another person

containing a promise for a consideration to do an act, followed by an unqualified and

unequivocal acceptance by the person to whom it is made.  Shaw Wholesale Co.v. Hackbarth,

102 Or. 80, 94, 201 P. 1066, 1067 (1921); see also Restatement (Second) of Contracts § 1 (1981)

("A contract is a promise or a set of promises for the breach of which the law gives a remedy, or

15 - OPINION & ORDER

the performance of which the law in some way recognizes as a duty.").  The promisor and

promisee are the parties to the contract.  Restatement (Second) of Contracts § 2, cmt. g

("promisor and promisee are the 'parties' to a promise").  While a contract may have multiple

promisors and promisees, the trustee in a Deed of Trust is not a promisor or promisee to that

agreement.  See Rinehart v. Onewest Bank, FSB, No. CV-10-6331-AA, 2011 WL 1311839, at *2

(D. Or. Apr. 1, 2011) (rejecting argument that trustee was a party to the Deed of Trust by virtue

of its assignment as successor trustee; "the fact that Regional is the successor trustee under the

Deed of Trust does not state a claim for breach of contract.").

That NWTS became the successor trustee as a result of an appointment by Wells Fargo

underscores that the trustee is not a party to the note or the Deed of Trust.  An assignment,

imbuing NWTS with any rights initially possessed by Ticor, would typically have been made by

Ticor.  Instead, the lender controlled the trustee appointment.  There was no "transfer" from an

initial party to the contract to an assignee.

As such, I agree with NWTS that it is not a party to the Deed of Trust and thus, I grant the

motion to dismiss plaintiffs' claim for breach of contract.

III.  FDCPA

The final claim the Lettenmaiers bring against NWTS is one under the FDCPA.  Compl.

at ¶¶ 110-12.  Plaintiffs allege that Wells Fargo, FreddieMac, and NWTS violated the FDCPA by

"taking or threatening to take any non-judicial action to effect dispossession or disablement of

the property when there is no present right to possession of the property claimed as collateral

through an enforceable security interest."  Id. at ¶ 111 (citing 15 U.S.C. § 1692f(6)).

The FDCPA was enacted to "eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA applies only to "debt collectors" as defined in the statute. 15 U.S.C. § 1692a(6). NWTS argues that a trustee who commences foreclosure on a property pursuant to a deed of trust is not a debt collector as defined by the FDCPA. In support, NWTS relies on Hulse v. Ocwen Federal Bank, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).

In Hulse, borrowers on a loan which was secured by a deed of trust, sued the lender, assignee, and attorneys who had conducted non-judicial foreclosure proceedings, and asserted various claims, including a claim against the lender under the FDCPA. Of relevance here is the claim brought against the lender for an alleged wrongful attempt to foreclose on the plaintiffs' property based on the arguments that the lender did not have a beneficial interest in the trust deed as a result of the notice of sale falsely stating that an attorney had been appointed trustee under the trust deed, and as a result of the notice of sale falsely stating that the plaintiffs had failed to make payments under the trust deed. Id. at 1203. As characterized by Judge Hubel, the plaintiffs' challenge was under 15 U.S.C. § 1692f(1), making the collection of any amount of a debt a violation of the FDCPA unless the amount is "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Judge Hubel concluded that the lender was not a "debt collector" under the FDCPA because the act of foreclosing on a trust deed was not the collection of a "debt" as defined in the statute. Id. at 1204. Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or

services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5). Judge Hubel explained that "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money. . . .  Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property."  Hulse, 195 F. Supp. 2d at 1204. That is, "[f]oreclosure by the trustee is not the enforcement of the [underlying] obligation because it is not an attempt to collect funds from the debtor."  Id.  Accordingly, Judge Hubel held that "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA."  Id.

Several subsequent decisions have followed Hulse, while several others have criticized its reasoning and reached the opposite conclusion.  See Allen v. United Fin. Mtg Corp., No. 09-2507 SC, 2010 WL 1135787, at *6 (N.D. Cal. Mar. 22, 2010) (discussing split between courts as to whether FDCPA applies to foreclosure actions; noting that rule in Hulse had been widely adopted by the district courts in the Ninth Circuit, but further noting that most decisions had failed to discuss contrary Fourth and Fifth Circuit cases; court found reasoning in those circuit cases compelling); Maynard v. Cannot, P.C., 650 F. Supp. 2d 1138, 1141 (D. Utah 2008) ("cases around the country appear to be split over the application of the FDCPA to mortgage foreclosure actions").

In the Fourth Circuit decision noted in Allen, the court held that a law firm which had initiated foreclosure proceedings on the lender's behalf pursuant to a loan secured by a deed of trust, had attempted to collect a debt within the meaning of the FDCPA.  Wilson v. Draper & Goldberg, PLLC, 443 F.3d 373, 376-77 (4th Cir. 2006).  The court noted the holding in Hulse,

18 - OPINION & ORDER

but disagreed with the premise that the original debt created by the note ceased to be a debt once foreclosure proceedings began.  Id. at 376.  Rather, the debt remained a "debt even after foreclosure proceedings commenced" and the actions "surrounding the foreclosure proceeding were attempts to collect that debt."  Id.  (indicating that a "foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt") (internal quotation omitted).  The court explained that there was "no reason to make an exception to the [FDCPA] when the debt collector uses foreclosure instead of other methods" to collect a debt.  Id.

In a recent case from the District of Idaho, the court explained the significance of a claim brought under section 1692f(1) as opposed a claim brought under section 1692f(6).  Armacost v. HSBC Bank USA, No. 10-CV-274-EJL-LMB, 2011 WL 825151 (D. Id. Feb. 9, 2011).  The "central issue" in the case was whether the defendant's alleged actions, which all related to instituting non-judicial foreclosure proceedings on property, constituted "debt collection" activities under the FDCPA.  Id. at *4.  The court noted the split of authority, that the Ninth Circuit had not decided the issue, and that the majority of district courts in the Ninth Circuit had held that the FDCPA does not apply to the enforcement of a security interest such as a non-judicial foreclosure proceeding.  Id.

The Armacost court joined "its sister district courts" in holding that a non-judicial foreclosure generally does not constitute a "debt collection activity" under the FDCPA, but the court found an exception to this general rule for claims brought under section 1692f(6).  Id. at *6.  Section 1692f lists the unfair practices regulated by the FDCPA.  Section 1692f(6) applies to enforcing security interests.  It provides that a debt collector violates the FDCPA by

[t]aking or threatening to take any nonjudicial action to effect dispossession or

19 - OPINION & ORDER

disablement of property if -
(A) there is no present right to possession of the property claimed as collateral
through an enforceable security interest;
(B) there is no present intention to take possession of the property; or
(C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).  In <u>Armacost</u>, the court noted that the definition of a "debt collector"

contains specific language directed at section 1692f(6).  <u>Armacost</u>, 2011 WL 825151, at *5.  A

"debt collector" is

> any person who uses any instrumentality of interstate commerce or the mails in
> any business the principal purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due
> or asserted to be owed or due another. . . .  [T]he term includes any creditor who,
> in the process of collecting his own debts, uses any name other than his own
> which would indicate that a third person is collecting or attempting to collect such
> debts.

15 U.S.C. § 1692a(6).  Then, the definition continues with the following language:  "For the

purpose of section 1692f(6) of this title, such term also includes any person who uses any

instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the enforcement of security interests."  <u>Id.</u>

    <u>Armacost</u> recognized that if the general definition of debt collector were read to include

the enforcement of a security interest, the third sentence of the definition directed to section

1692f(6), would be "surplusage" because any business whose principal purpose was enforcing

security interests would also have a principal purpose of collecting debts and thus, would already

be included in the definition of debt collector.  <u>Id.</u>  Such a construction of the statute would

violate canons of statutory construction.  <u>Id.</u> ("if debt collection generally included the

enforcement of a security interest, the language specifying so for the purposes of § 1692f(6)

would be surplusage, and such a construction would violate a long standing canon of statutory

20 - OPINION & ORDER

construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous"). Id. (internal quotation omitted).

The Armacost court agreed with those courts holding that a non-judicial foreclosure generally does not constitute a debt collection activity under the FDCPA and it dismissed some of the FDCPA claims. But, it denied the defendant's motion to dismiss to the extent the plaintiff made a claim under section 1692f(6). Id. at *6; see also Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, Civ. No. 06-3103 (RHK/AJB), 2007 WL 2695795, at *4 (D. Minn. Sept. 12, 2007) ("Because Congress purposefully made a distinction between a debt collector and an enforcer of a security interest, the Court concludes that an enforcer of a security interest, such as a law firm foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6).") (citing cases from other jurisdictions reaching same conclusion).

As I read the cases, while there is disagreement over whether conduct occurring in the context of a non-judicial foreclosure is actionable under the FDCPA as unlawful "debt collection," there is a consensus that to the extent the challenged conduct is alleged to be a violation of section 1692f(6), the putative defendant is a debt collector under the FDCPA. While Hulse and other cases held that actions taken in foreclosing on real property were not "debt collection" activities for purposes of section 1692e, or section 1692f(1)-(5), those cases nonetheless excepted claims brought under section 1692f(6), or did not discuss the issue. E.g., Armacost, 2011 WL 825151, at *6; see also Montgomery v. Huntington Bank, 346 F.3d 693, 700-01 (6th Cir.2003) ("except for purposes of § 1692f(6), an enforcer of a security interest . . . does not meet the statutory definition of a debt collector under the FDCPA").

21 - OPINION & ORDER

Some cases, including the Fifth Circuit decision referred to in <u>Allen</u>, have gone further and held that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests." <u>Kaltenbach v. Richards</u>, 464 F.3d 524, 528-29 (5th Cir. 2006) (criticizing the <u>Hulse</u> decision's focus on the specific debt collection activity at issue when, in the Fifth Circuit's opinion, the inquiry is whether the party met the general statutory definition of a debt collector). But again, there appears to be no dispute that activities challenged under section 1692f(6) are debt collection activities subject to the FDCPA.

In this case, the only FDCPA violation alleged is a section 1692f(6) violation. Compl. at ¶ 113. Thus, the holding in <u>Hulse</u> is not directly applicable because it addressed a claim brought under section 1692f(1). I need not decide whether, if the claim were brought under a different FDCPA section, I would follow the majority of the district courts in the Ninth Circuit, including <u>Hulse</u>, or whether I would follow the Fourth and Fifth Circuit decisions rejecting <u>Hulse</u>. That issue is left for another day. Because the FDCPA claim is brought under section 1692f(6), NWTS is a debt collector. I deny NWTS's motion to dismiss the FDCPA claim.

## IV. Additional Arguments

NWTS also contends that plaintiffs' action must be dismissed for failure to name an indispensable party. Alternatively, NWTS moves for a more definite statement under Rule 12(e).

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion must "point out the defects complained of and the details desired." <u>Id.</u>. NWTS fails to note any particular defects or details desired. Because

NWTS has failed to comply with the rule, I deny the motion.

Rule 19 governs the joinder of parties. NWTS notes that plaintiffs' claims seek to void the trustee's sale and the trust deed and amended trust deed that flowed from that sale. To declare the sale and the resulting trustee's deeds void necessarily requires the reinstatement of the Deed of Trust, the Second Trust Deed, and fee title interest in the property. NWTS notes that plaintiffs fail to join R.J. Humpal who purports to hold a five-percent fee title interest by way of conveyance from the Lettenmaiers to Humpal and ALPHA Foundation. Plaintiffs have also failed to join National City Bank, the beneficiary of the Second Trust Deed. NWTS argues that failure to join these necessary parties will result in double or otherwise inconsistent obligations by NWTS, due to their interests in the property.

While NWTS's argument has merit, I deny the motion because, as explained above, all claims in this action which challenge FreddieMac's title are precluded by virtue of the FED action. To the extent Humpal and National City Bank are necessary parties, they are necessary only to those claims which seek to invalidate FreddieMac's title. Because those claims are precluded, they are dismissed, eliminating the possibility for inconsistent obligations by NWTS.

## CONCLUSION

NWTS's motion to dismiss [16] is granted in part and denied in part.

IT IS SO ORDERED.

Dated this ___20th___ day of ___May_____, 2011

/s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge

23 - OPINION & ORDER