IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT W. LETTENMAIER, an
individual, LESLIE A. LETTENMAIER,
an individual, and ALPHA
FOUNDATION,                                    No.  CV-11-156-HZ

        Plaintiffs,

    v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION, MORTGAGE
ELECTRONIC REGISTRATION                        OPINION & ORDER
SYSTEMS, INC., WELLS FARGO
BANK, N.A., and NORTHWEST TRUSTEE
SERVICES, INC., a Washington
Corporation,

        Defendants.


/ / /

/ / /

/ / /


1 - OPINION & ORDER

Robert W. Lettenmaier
Leslie A. Lettenmaier
ALPHA Foundation
17878 SE Scrutton Lane
Milwaukie, Oregon 97267

      Plaintiffs Pro Se

Pilar C. French
LANE POWELL PC
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204-3158

      Attorney for Defendants Federal Home Loan Mortgage Corporation, Mortgage Electronic
      Registration Systems, Inc., Wells Fargo Bank, N.A.

HERNANDEZ, District Judge:

      This action arises out of a non-judicial foreclosure sale of residential real property.

Plaintiffs Robert and Leslie Lettenmaier and Alpha Foundation challenge the foreclosure and

contend that defendants violated other federal laws in the foreclosure process.  Presently,

defendants Federal Home Loan Mortgage Corporation (FreddieMac), Mortgage Electronic

Registration Systems, Inc. (MERS), and Wells Fargo (hereinafter "the moving defendants") move

to dismiss the Complaint.[1]  I grant the motion.

## BACKGROUND

      The Lettenmaiers received a loan from M&T Mortgage Corporation in the amount of

$224,000, secured by a Deed of Trust against real property in Clackamas County, Oregon.  Exs. 1

& 2 to French Decl.[2]  The Deed of Trust was executed December 7, 2006, and recorded in

---

    [1]  In a May 20, 2011 Opinion & Order (dkt #38), I granted in part and denied in part
defendant Northwest Trustee Service's (NWTS) separately filed motion to dismiss.

    [2]  Moving defendants move to dismiss the claims against them pursuant to Federal Rules
of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a

Clackamas County on December 12, 2006.  Ex. 2 to French Decl.  The "Borrower" is identified

as the Lettenmaiers.  <u>Id.</u>  The "Lender" is M&T Mortgage Corporation.  <u>Id.</u>  The "Trustee" is

Ticor Title Insurance Company.  <u>Id.</u>

      The Deed of Trust is noted to be a "Security Instrument" and MERS is noted to be the

"Grantee of this Security Instrument."  <u>Id.</u>  MERS is further defined to be a "separate corporation

that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the**

**beneficiary under this Security Instrument**."  <u>Id.</u>

      The Lettenmaiers failed to make loan payments beginning in August 2009.  Ex. 5 to

French Decl; Compl. at ¶ 28.  Plaintiffs allege that before that date, on or about June 16, 2009,

the Lettenmaiers "made a qualified written demand upon Wells Fargo pursuant to the Real Estate

Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e)."  Compl. at ¶ 26.  They further allege

that on or about July 30, 2009, Wells Fargo responded to the RESPA "qualified written demand"

by stating that Wells Fargo had received "same," would research the matter, and would provide

the information when the research was complete.  Compl. at ¶ 27.

      On September 24, 2009, a document entitled "Full Reconveyance (Without

---

claim).  Although a motion under Rule 12(b)(1) may consider documents outside of the
pleadings, a Rule 12(b)(6) motion is limited to the allegations in the Complaint.  To the extent
the Court relies on Rule 12(b)(6), moving defendants request that the Court take judicial notice
of several underlying documents.  It is appropriate to consider facts not in a complaint if they
may be judicially noticed under Rule 201, are incorporated by reference by the plaintiff, or are
matters of public record.  <u>Dunn v. Castro</u>, 621 F.3d 1196, 1204 n.10 (9th Cir. 2010); <u>Coto
Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th Cir. 2010).

     I consider the Deed of Trust and all other documents recorded or filed in Clackamas
County because they are matters of public record.  Exs. 2-8 to French Decl.  I also consider the
Promissory Note signed by the Lettenmaiers on December 6, 2006, because plaintiffs refer to it
in the Complaint.  Ex. 1 to French Decl.

Relinquishment of Debt)" was recorded in Clackamas County.  Ex. 3 to Taggart Decl.[3]  It states,

in part, that

> trustee Ticor Title Insurance Company, under that certain Deed of Trust, dated
> December 6, 2006, . . . , having been notified by the Trustor of the real property
> listed below, to grant all authority to Trustee, <u>to reconvey</u>, reciting that all of the
> obligations secured by the Deed of Trust may not have been fully satisfied, but
> <u>releasing the trust property as security for the obligation</u> as per tacit agreement for
> non-compliance penalty found in the Qualified Written Request/Demand in the
> Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e), mailed on
> 07/02/09 and received on 07/20/09, and Trustor's NOTICE AND CONTRACT
> dated 07/10/09 and received by Lender/Trustee on 08/1/09.

<u>Id.</u>  This document further states that

> IN WITNESS WHEREOF, WESLEY REAM, by Power of Attorney/Tacit
> Agreement by Northwest Trustee Services, Inc., as Trustee has caused its
> Corporate name affixed by acting Trustee, being duly authorized under an
> Unlimited Power of Attorney, on the date shown in the acknowledgment
> certificate below.

<u>Id.</u>  The document is dated September 24, 2009, and signed by "Wesley Ream" for Ticor

Insurance Company "as Trustee with Power of Attorney by Tacit Agreement."

The document also states that recording was requested by Ticor Title Insurance Company.

<u>Id.</u>  It requests that after recording, it be mailed to "SafeHaven Foundation," C/O:  R.J. Humpal,

in Calimesa, California.  <u>Id.</u>  It was recorded in Clackamas County on September 24, 2009.  <u>Id.</u>

The following day, September 25, 2009, the Lettenmaiers executed a Warranty Deed in

which they purported to grant a deed in the property subject to the Deed of Trust, to plaintiff

Alpha Foundation and R.J. Humpal, for $100,000.  Ex. 5 to Taggart Decl.; Compl. at ¶ 32.   The

---

[3] NWTS's motion to dismiss was supported by the Declaration of Kathy Taggart and
exhibits attached to that Declaration (dkt #18).  As explained in the May 20, 2011 Opinion &
Order, the exhibits were appropriate for judicial notice.  May 20, 2011 Op. & Ord. at p. 1.  I cite
to those exhibits as needed.

document notes that a 95% interest in the property was conveyed to Alpha Foundation, and a 5% interest was conveyed to Humpal. Id. It requests that after recording, the document be mailed to Alpha Foundation, with an Oregon City, Oregon address. Id. The name "Wes Ream" appears in handwriting under the address for Alpha Foundation. Id. The document was recorded on September 25, 2009. Id. Plaintiffs allege that after conveying their interest in the property to Alpha Foundation, they executed a lease agreement with Alpha Foundation to lease the property back. Compl. at ¶ 32.

On December 3, 2009, Kathy Taggart, acting as Vice-President of MERS, assigned the Deed of Trust to defendant Wells Fargo. Ex. 3 to French Decl. This assignment was recorded in Clackamas County on December 4, 2009. Id.

Previously, in May 2006, Wells Fargo granted Taggart a limited power of attorney for executing, acknowledging, recording, or delivering a Notice of Default and Election to Sell, and for appointing or substituting trustees where Wells Fargo was the original or substituted beneficiary or servicing agent for the beneficiary. Ex. 8 to Taggart Decl. This document was recorded in Clackamas County on May 24, 2006. Id.

On December 3, 2009, Taggart, acting as "Attorney-in-Fact" for Wells Fargo, appointed NWTS as the successor trustee to Ticor Title Insurance Company. Ex. 4 to French Decl. This document was recorded in Clackamas County on December 4, 2009. Id.

On December 4, 2009, a Notice of Default and Election to Sell (NODES) was recorded in Clackamas County. Ex. 5 to French Decl. It refers to the Deed of Trust and the original parties to the Deed of Trust, and notes the subsequent assignment to Wells Fargo. Id. The NODES also recites that the Lettenmaiers were in default on their obligations beginning August 1, 2009. Id.

The non-judicial foreclosure process culminated in the sale of the property on April 12, 2010. Taggart Decl. at ¶ 14. The Trustee's Deed was issued to FreddieMac, and recorded in Clackamas County on April 19, 2010. Ex. 6 to French Decl. The Trustee's Deed states that the property was sold at public auction to FreddieMac for $196,000, with FreddieMac "being the highest and best bidder at the sale." Id. This document was recorded in Clackamas County on April 19, 2010. Id. An Amended Trustee's Deed was recorded in Clackamas County on July 13, 2010. Ex. 7 to French Decl.

The Amended Trustee's Deed states that the property was sold "to the beneficiary" for $196,000, with "the beneficiary being the highest and best bidder at the sale," and the beneficiary then "designated Federal Home Loan Mortgage Corporation as Grantee hereunder." Id.

On May 25, 2010, FreddieMac filed a Forcible Entry & Detainer (FED) action against the Lettenmaiers who were still living on the property. Ex. C to Shill Decl.[4] The Lettenmaiers filed an Amended Answer to the FED action on August 16, 2010. Id.; Ex. A to Shill Decl. There, the Lettenmaiers asserted that FreddieMac was not entitled to possession because (1) the eviction notice was wrong; (2) the trustee's sale was invalid because FreddieMac was not present to bid on the property and was not the beneficiary of record at the time the Trustee's Deed averred the foreclosure sale took place, and (3) the trustee's sale was invalid because no foreclosure sale was conducted. Ex. A to Shill Decl.

A General Judgment was filed on October 4, 2010. Ex. 8 to French Decl. It recites that the case was tried on September 1, 2010, before the Honorable Douglas V. Van Dyk. Id. The

---

[4]  NWTS's motion to dismiss was also supported by the Declaration of Teresa Shill (dkt #19), and exhibits appended to her Declaration, which were appropriate for judicial notice. May 20, 2011 Op. & Ord. at p. 1. I cite to those exhibits when appropriate.

Judgment was issued by the Clackamas County Circuit Court.  Id.  The Court made two relevant

findings:  (1) that a tenancy was created under which Robert Lettenmaier, former owner of the

property, became a tenant in the property and as a tenant, Robert Lettenmaier had not received

sufficient notice to terminate his tenancy; and (2) that the underlying trustee's sale was valid with

regard to the defenses asserted in defendants' Amended Answer, and FreddieMac is the title

owner of the property.  Id.

On January 19, 2011, FreddieMac initiated a second FED action against the Lettenmaiers

in Clackamas County Circuit Court.  Ex. D to Shill Decl.  The Lettenmaiers removed the case to

this Court on February 9, 2011.  On March 18, 2011, I granted FreddieMac's motion to remand

the case back to state court.

STANDARDS

I.  Rule 12(b)(1)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1)

addresses the court's subject matter jurisdiction.  The party asserting jurisdiction bears the burden

of proving that the court has subject matter jurisdiction over his claims.  Kokkonen v. Guardian

Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional

allegations even though the allegations are formally sufficient.  See Corrie v. Caterpillar, Inc.,

503 F.3d 974, 979-80 (9th Cir. 2007) (court treats motion attacking substance of complaint's

jurisdictional allegations as a Rule 12(b)(1) motion); Dreier v. United States, 106 F.3d 844, 847

(9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the

substance of a complaint's jurisdictional allegations despite their formal sufficiency[.]") (internal

quotation omitted).  Additionally, the court may consider evidence outside the pleadings to

resolve factual disputes.  <u>Robinson v. United States</u>, 586 F.3d 683, 685 (9th Cir. 2009); <u>see also</u>

<u>Dreier</u>, 106 F.3d at 847 (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1)

may rely on affidavits or any other evidence properly before the court).

II.  Rule 12(b)(6)

      On a motion to dismiss, the court must review the sufficiency of the complaint.  <u>Scheuer</u>

<u>v. Rhodes</u>, 416 U.S. 232, 236 (1974).  All allegations of material fact are taken as true and

construed in the light most favorable to the nonmoving party.  <u>American Family Ass'n, Inc. v.</u>

<u>City & County of San Francisco</u>, 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the court need

not accept conclusory allegations as truthful.  <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1121 (9th Cir.

1992).

      A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff alleges the "grounds"

of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action[.]"  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544,

555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative

level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)[.]"  <u>Id.</u> (citations and footnote omitted).

      To survive a motion to dismiss, the complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)

(internal quotation omitted).  Additionally, "only a complaint that states a plausible claim for

relief survives a motion to dismiss." Id. at 1950.  The complaint must contain "well-pleaded

facts" which "permit the court to infer more than the mere possibility of misconduct." Id.

DISCUSSION

Plaintiffs bring the following claims against the moving defendants:  (1)  violation of the

Oregon Trust Deed Act, Oregon Revised Statutes §§ (O.R.S.) 86.705-86.795 (brought against all

three moving defendants); (2) breach of contract (brought against MERS and Wells Fargo); (3)

violation of the Truth in Lending Act, 15 U.S.C. §§ 1601- 1667f (TILA) (brought against Wells

Fargo); (4) violation of RESPA, 12 U.S.C. §§ 2601-2610 (brought against Wells Fargo); and (5)

violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (FDCPA) (brought

against FreddieMac and Wells Fargo).

Moving defendants seek dismissal of all claims.

I.  Standing

Moving defendants argue that this Court lacks subject matter jurisdiction because

plaintiffs lack standing to pursue this action.  They contend that because the Lettenmaiers allege

that they conveyed their property to Alpha Foundation and Humpal in September 2009, they lack

standing to challenge the Deed of Trust, the Note, or any other document related to the real

property.  They further contend that as a result of the alleged conveyance to Alpha Foundation

and Humpal, the Lettenmaiers would derive no benefit from the foreclosure being voided and

thus, they have no basis for claiming that the foreclosure was conducted in violation of the

contract or the FDCPA.  Finally, they contend that Alpha Foundation also lacks constitutional

standing.

"Standing is a core component of the Article III case or controversy requirement."

9 - OPINION & ORDER

Barnum Timber Co. v. EPA, 633 F.3d 894, 897 (9th Cir. 2011) (citing Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 (1992)).  Standing pertains to the federal courts' subject matter

jurisdiction and is properly raised in a Rule 12(b)(1) motion to dismiss.  Chandler v. State Farm

Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010); see also Cetacean Cmty. v. Bush, 386

F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not

a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction

over the suit.").

> To establish Article III standing: (1) a plaintiff "must have suffered an
> injury in fact—an invasion of a legally protected interest which is (a) concrete and
> particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2)
> "there must be a causal connection between the injury and the conduct
> complained of—the injury has to be fairly traceable to the challenged action of the
> defendant, and not the result of independent action of some third party not before
> the court"; and (3) "it must be likely, as opposed to merely speculative that the
> injury will be redressed by a favorable decision."

San Luis & Delta-Mendota Water Auth. v. Salazar, 638 F.3d 1163, 1169 (9th Cir. 2011) (quoting

Lujan, 504 U.S. at 560–61), petition for cert. filed, 80 U.S.L.W. 3004 (U.S. June 22, 2011) (No.

10-1551).

Moving defendants' discussion of the standing issue is less than clear, but as I understand

it, this argument is directed to the Oregon Trust Deed Act claim, the breach of contract claim,

and the FDCPA claim, but not to the TILA or RESPA claims.  Because the argument concerning

the standing of the Lettenmaiers is distinct from the argument concerning the standing of Alpha

Foundation, I address them separately.

/ / /

/ / /

10 - OPINION & ORDER

A.  Lettenmaiers

Plaintiffs allege that they conveyed their interest in the property to Alpha Foundation in September 2009.  Compl. at ¶ 32; Exs. 3-5 to Taggart Decl.  As such, moving defendants argue that the Lettenmaiers can no longer establish a personal stake in the outcome of any claims challenging an improper foreclosure because they would derive no benefit from the foreclosure being voided.  In addition to the claim based on the Oregon Trust Deed Act, moving defendants argue that this argument applies to the breach of contract and FDCPA claims as well because these latter two claims are based on allegations that NWTS had no authority to foreclose on the property and there was no right to possession of the property.

In response, plaintiffs make no argument that the Lettenmaiers have standing to pursue these claims.  Instead, they argue that even if the Lettenmaiers lacked standing, Alpha Foundation has standing.

I agree with moving defendants that the Lettenmaiers lack standing to bring the Oregon Trust Deed Act claim, the breach of contract claim, and the FDCPA claim.  All three claims challenge what plaintiffs contend is an invalid foreclosure and the Lettenmaiers, as alleged tenants, have not shown an invasion of their legally protected interest when they no longer own the property.  Thus, the Lettenmaiers fail to establish an "injury in fact."

B.  Alpha Foundation

Alpha Foundation is alleged to be "an unincorporated religious organization organized to assist persons in negotiating with financial institutions concerning mortgages and its principle [sic] place of operations is P.O. Box 3189, Oregon City, Oregon."  Compl. at ¶ 9.  Moving defendants argue that Alpha Foundation lacks standing to assert the foreclosure-related claims

11 - OPINION & ORDER

whether Alpha Foundation is acting on its own behalf or on behalf of its members.  Moving

defendants further suggest that the alleged conveyance of the property from the Lettenmaiers to

Alpha Foundation was a sham.  Defts' Reply Mem. at p. 4.

 In support of their sham assertion, moving defendants state that despite the allegation in

the Complaint that Alpha Foundation has an Oregon domicile, an online search of both the

Oregon Secretary of State Corporation Division Business Information Center, and the Charities

Database maintained by the Oregon Department of Justice, failed to yield a record of "Alpha

Foundation" as either a registered charity or an entity qualified to do business in Oregon.  While I

have no doubt that moving defendants undertook the searches as noted, they fail to tender this

information in an affidavit or sworn declaration, making it inappropriate for the Court to rely on

these assertions in support of dismissal.

 An association or organization may possess standing to sue on its own behalf for injuries

it has sustained.  Southern Pac. Co. v. City of Portland, 221 F.R.D. 637, 640 (D. Or. 2004).  "In

determining whether an organization has standing the inquiry is the same as that for an

individual:  Has the plaintiff alleged such a personal stake in the outcome of the controversy as to

warrant invocation of federal-court jurisdiction?"  Id.

 Alternatively, an organization may "bring suit on behalf of its members whether or not

the organization itself has suffered an injury from the challenged action."  Fleck and Assocs., Inc.

v. City of Phoenix, 471 F.3d 1100, 1105 (9th Cir. 2006).  "To obtain associational standing, the

entity must show that (1) at least one of its members would have standing to sue in his own right,

(2) the interests the suit seeks to vindicate are germane to the organization's purpose, and (3)

neither the claim asserted nor the relief requested requires the participation of individual

12 - OPINION & ORDER

members in the lawsuit." Id. at 1105-06.

Moving defendants argue that Alpha Foundation lacks standing to bring these claims on its own behalf because the alleged conveyance of the property by the Lettenmaiers to Alpha Foundation was expected to be only temporary and "with the understanding that upon resolving the issues with Wells Fargo, Alpha Foundation would deed the property back to Lettenmaiers." Compl. at ¶ 32; see also Id. at ¶ 33 ("Alpha Foundation stands ready to reconvey any interest they [sic] may have in at [sic] 17878 Southeast Scrutton Lane, Milwaukie, Oregon to Lettenmaiers once the issues involving the loan have been resolved.").

Moving defendants argue that to the extent Alpha Foundation is acting on its behalf, it can show no actual or potential injury because "its purported ownership is a fabrication, and win or lose, it is going to convey whatever interest it holds back to the Lettenmaiers." Defts' Reply at p. 5. I disagree. If the allegations are true, and if whatever "issues" the Lettenmaiers had with Wells Fargo had been resolved, Alpha Foundation would have transferred its interest back to the Lettenmaiers who, presumably, would have paid Alpha Foundation for once again obtaining rights to the property. Based on the allegations in the Complaint, the allegedly invalid foreclosure interrupted the Lettenmaiers' ability to resolve their issues with Wells Fargo, thereby preventing Alpha Foundation from reconveying the property to the Lettenmaiers in exchange for payment from the Lettenmaiers. Should plaintiffs prevail in this case and the foreclosure be deemed invalid and void, the opportunity for Alpha Foundation to regain its rights to the property may arise as a result of a judgment in plaintiffs' favor, and Alpha Foundation could then attempt to reconvey the property back to the Lettenmaiers in exchange for a payment from the Lettenmaiers. On a motion to dismiss, even under Rule 12(b)(1), I am unwilling to conclude that

13 - OPINION & ORDER

Alpha Foundation can show no potential injury that is causally connected to the challenged conduct.

I agree with moving defendants however, that Alpha Foundation fails to establish standing if it is acting as a representative of its members because there are no allegations, and Alpha Foundation has submitted no evidence, showing that its members would otherwise have standing or that the purposes of the association are served by prosecuting this action.

II.  Res Judicata

To the extent that any of the plaintiffs has standing, moving defendants raise alternative arguments in support of dismissing the claims.  Moving defendants contend that based on the Judgment in the FED action, the wrongful foreclosure claim under the Oregon Trust Deed Act and the breach of contract claim are barred by res judicata.  I agree with moving defendants.

In several pages of the May 20, 2011 Opinion & Order on NWTS's motion to dismiss, I discussed at some length the doctrine of claim preclusion and its application in this case.  I incorporate by reference that discussion here.  May 20, 2011 Op. & Ord. at pp. 9-12.  As noted there, during the FED case, the Lettenmaiers contested the validity of the foreclosure.  They "either actually challenged, or had the opportunity to challenge, the very same title issues they raise here in their first claim for relief under the Oregon Trust Deed Act." Id. at pp. 11-12. Because "the arguments and defenses they made in the FED action were reduced to a judgment issued by a circuit court, which had jurisdiction to adjudicate proper title to the property[,]" the Lettenmaiers were precluded from litigating the claims in a subsequent action.  Id. at p. 12.

The same is true here.  The claims brought by the Lettenmaiers against FreddieMac which challenge the validity of the title are barred by claim preclusion.  Additionally, the judgment in

14 - OPINION & ORDER

the FED action also bars Alpha Foundation from bringing such claims against FreddieMac because Alpha Foundation is in privity with the Lettenmaiers.

As explained in the May 20, 2011 Opinion, claim preclusion applies to parties in privity with parties to the earlier action. Id. There are "three general categories of parties that may be in privity with parties to earlier litigation: (1) those who control an action though not a party to it; (2) those whose interests are represented by a party to the action; and (3) successors in interest to those having derivative claims." Secure Invs., LLC v. Anderegg, 188 Or. App. 154, 167, 71 P.3d 538, 545-46 (2003) (internal quotation omitted).

Alpha Foundation is in privity with the Lettenmaiers under the second and third categories. Its interests are aligned with the Lettenmaiers and were protected by the Lettenmaiers in the FED action. There, the Lettenmaiers either challenged, or had the opportunity to challenge, whether the homeowner (whether it be the Lettenmaiers or Alpha Foundation/Humpal) or FreddieMac had proper title to the property. Alpha Foundation possessed the identical interest. Thus, Alpha Foundation's interests were represented by a party to the FED action and the doctrine of claim preclusion applies to its claims against FreddieMac. Additionally, Alpha Foundation is the Lettenmaiers' successor-in-interest to the property and its claims are additionally precluded for that reason.

Moving defendants argue that plaintiffs' Oregon Trust Deed Act and breach of contract claims against MERS and Wells Fargo are similarly precluded because those defendants were in privity with FreddieMac. Moving defendants contend that MERS, as the beneficiary by nomination under the trust deed, and Wells Fargo, as servicer of the loan, are agents for FreddieMac, and thus, are in privity with FreddieMac and protected by the doctrine of claim

preclusion.

Judge Panner recently concluded that MERS, as an agent or nominee of the beneficiary of the loan, acted as an agent of the beneficiary and thus, was in privity with the loan servicer, who was also an agent of the beneficiary, and who had been a named defendant in a state court action in which a judgment had been entered.  Buckland v. MERS Mortg. Elec. Reg. Sys., Inc., No. CV-11-3053-CL, Ord. at pp. 5-6 (D. Or. May 17, 2011) (dkt #16).  Thus, the claims brought against MERS in the subsequent federal action were barred by claim preclusion.  Id.

Plaintiffs do not challenge that Wells Fargo is in privity with FreddieMac, but they argue that MERS is not in privity.  They rely on a case from the Eastern District of Missouri which determined that MERS was not in privity with its successor in interest which was the named defendant in a prior state court action.  Mortg. Elec. Reg. Sys., Inc. v. Bellistri, No. 4:09-CV-731, 2010 WL 2720802, at *17 (E.D. Miss. July 1, 2010).  In Bellistri, the original borrower executed a promissory note and deed of trust in favor of BNC Mortgage.  MERS was named in the deed of trust as nominee of BNC.  The borrower failed to pay taxes on the property and Bellistri was the high bidder at a tax sale administered by the county.  Under the relevant state statute, Bellistri sent BNC a notice of redemption, resulting in the issuance of a collector's deed to Bellistri in September 2006.  Bellistri did not sent a notice of redemption to MERS, which held a beneficial interest in the property.  In December 2006, Bellistri filed an action in state court to quiet title and to evict the original borrower from the property.  In that action, Bellistri named the original homeowner and Ocwen Loan Servicing, LLC as defendants.  BNC had previously conveyed the note to Deutsche Bank which had contracted with Ocwen to serve as agent and servicer with respect to the note in June 2002.

In April 2008, the state trial court granted Bellistri's motion for summary judgment against the original borrower and Ocwen, vesting Bellistri with fee simple title to the property. Ocwen appealed the judgment and the Missouri Court of Appeals affirmed the judgment on the basis that Ocwen lacked standing to attempt to set aside the tax sale. Two days later, MERS learned, for the first time, about the quiet title litigation filed by Bellistri.

In the federal court action, MERS argued that Bellistri's failure to give MERS notice of its redemption rights violated the relevant Missouri statute governing the sale of property for unpaid property taxes. MERS also argued that Bellistri's failure to notify MERS of its redemption rights violated MERS's rights under the Due Process Clause. The district court agreed with MERS on both arguments. Id. at *10-14.

Bellistri argued that issue and claim preclusion principles prevented MERS from collaterally attacking the state court quiet title judgment. Id. at *15-16. The court found two independent bases for its conclusion that the state court quiet title judgment did not preclude the subsequent federal court action by MERS. Id. at *17. First, the court noted that MERS was not a party to the state court action, and was not in privity with Ocwen. Id. The court explained that because MERS had assigned its beneficial interest in the trust deed to Ocwen in April 2007, it was not in privity with Ocwen. Id. ("'[l]itigation by the transferee cannot bind the transferor'") (quoting 18A Wright, Miller & Cooper, Federal Practice & Procedure § 4462 at 666-67 (2d ed. 2002)). Second, the court held that because the Missouri Court of Appeals had decided the case on the basis of Ocwen's standing, the state court decision was not a decision on the merits and thus, neither claim nor issue preclusion applied. Id.

Plaintiffs in the instant case argue that based on Bellistri, MERS is not in privity with

17 - OPINION & ORDER

FreddieMac, the plaintiff in the FED action.  Moving defendants respond that <u>Bellistri</u> is

distinguishable because (1) Missouri claim preclusion law requires identity of parties while

Oregon requires only privity, and (2) the underlying state court action in <u>Bellistri</u> did not reach

the merits, providing an alternative basis for the district court to reject Bellistri's argument that

MERS could not collaterally attack the state court judgment.

I agree with moving defendants.  As <u>Bellistri</u> noted, Missouri law allows issue preclusion

when, *inter alia*, the party against whom issue preclusion is asserted was a party or is in privity

with a party to the prior adjudication.  <u>Id.</u> at *17.  But, for claim preclusion, Missouri law

requires identity of the persons and parties to the action.  <u>Id.</u>  Thus, the <u>Bellistri</u> court's discussion

of privity took place in the context of addressing issue preclusion, not claim preclusion, and it is

not determinative of this claim preclusion argument.  Additionally, as moving defendants note,

there were alternative holdings by the <u>Bellistri</u> court on the preclusive effect of the state court

judgment, making the discussion of privity not controlling on the outcome of the issue.

Even if I considered the <u>Bellistri</u> decision as persuasive precedent, a closer examination

of the decision raises questions about whether an Oregon court would follow it.  <u>Bellistri</u>

determined that MERS was not in privity with Ocwen because MERS had assigned its interest in

the property to Ocwen.  But, at the time Bellistri initially filed his quiet title action in state court,

MERS still held an interest in the property.  Bellistri named Ocwen as a defendant in the quiet

title action presumably because it was the loan servicer at the time, not because it held a

beneficial interest in the property.  As the <u>Bellistri</u> court noted, MERS possessed a beneficial

interest in the property continually from 2002 until April 2007.  <u>Id.</u> at *4.  Quite clearly, at the

time the state court action was filed, MERS and Ocwen had an identity of interests in opposing

the quiet title claim by Bellistri.

The Bellistri court does not explain why MERS's subsequent assignment of its interest in the property to Ocwen dispossessed MERS of the identity of interests it shared with Ocwen at the start of the state court litigation.  Perhaps it is because in a quiet title action, only the putative holder of the beneficial interest at the time of judgment has an incentive to actively litigate the issues.  But here, plaintiffs challenge the foreclosure on the basis that MERS never had an interest in the property.  That is, they seek to undo FreddieMac's entitlement to the property based on their argument that MERS never had a rightful beneficial interest to pass on to Wells Fargo and thus, Wells Fargo had no right to foreclose.  Thus, any subsequent holder of the beneficial interest in the property has the incentive to litigate MERS's rights.

Plaintiffs raised issues regarding the proper beneficiary in the FED action, or had the opportunity to do so.  To the extent the issues were actually litigated, or could have been, FreddieMac represented MERS's interests, and MERS is in privity with FreddieMac for the purposes of claim preclusion.  Bellistri is distinguishable because the law in Missouri is different, the "privity" determination by that court was not essential to its holding, and because the nature of the state court action affects the nature of the interests represented and the state court quiet title action in Bellistri is distinct from the state court FED action in the instant case.

Following Judge Panner's decision, I conclude that MERS and Wells Fargo are in privity with Freddie Mac and thus, the FED judgment precludes the claims plaintiffs bring against FreddieMac, MERS, and Wells Fargo regarding alleged foreclosure improprieties.

As I discussed in the May 20, 2011 Opinion & Order, both the Oregon Trust Deed Act claim and the breach of contract claim are precluded.  May 20, 2011 Op. & Ord. at pp. 13-14.

19 - OPINION & ORDER

Because the breach of contract claim is grounded in the allegation that defendants violated the

Oregon Trust Deed Act, and thus effectively challenges the title to the property, the claim is

precluded by the judgment in the FED action.  In the May 20, 2011 Opinion & Order, I noted that

to the extent the breach of contract claim was not based on a challenge to FreddieMac's title, the

FED action did not preclude it.  Id. at p. 14.  Upon closer examination of the Complaint, I

conclude that this claim is entirely based on a challenge to the title.  Compl. at ¶¶ 100-105.  The

only substantive allegation is that in violation of the Deed of Trust, the foreclosure was not

conducted in the manner prescribed by applicable law.  Id. at ¶ 101.  As explained above, this is a

challenge under the Oregon Trust Deed Act.  Thus, because the breach of contract claim is

essentially a challenge to FreddieMac's title based on an alleged violation of the Oregon Trust

Deed Act, it is precluded, along with the claim directly under the Oregon Trust Deed Act, by the

doctrine of claim preclusion.

III.  TILA

     Plaintiffs' Third Claim for Relief alleges a violation of TILA.  Compl. at ¶¶ 106-07.

Although plaintiffs seek statutory damages and reasonable attorney's fees and costs for the

alleged TILA violation, plaintiffs fail to allege any actual violations such as a failure to provide

proper closing documents or facially obvious defects in disclosure documents.

     More importantly, any possible TILA claim is time-barred.  A cause of action for

damages brought under TILA must be commenced "within one year from the date of the

occurrence of the violation."  15 U.S.C. § 1640(e).  The loan originated in 2006.  This action was

filed in February 2011.  The TILA claims are dismissed.

/ / /

20 - OPINION & ORDER

## IV.  RESPA

Plaintiffs' Fourth Claim for Relief alleges a violation of RESPA.  Compl. at ¶¶ 108-09.
Specifically, plaintiffs contend that on or about June 16, 2009, they made a "qualified written
demand upon Wells Fargo" pursuant to RESPA, and that on or about July 30, 2009, Wells Fargo
responded that it had received "same," would research the matter, and would provide information
when its research was complete.  Id. at ¶¶ 26-27.  Plaintiffs allege that Wells Fargo then made no
communication responsive to their RESPA demand within the sixty days allowed by RESPA.  Id.
at ¶ 29.

Moving defendants move to dismiss the RESPA claim because plaintiffs fail to plead
sufficient facts establishing they sent a "Qualified Written Request" (QWR), plaintiffs fail to
plead that they sent the alleged QWR to the address specified by the servicer for receipt of such
correspondence, and because plaintiffs fail to plead sufficient facts establishing that they have
suffered actual damage.

RESPA defines a QWR as:

a written correspondence, other than notice on a payment coupon or other
payment medium supplied by the servicer, that  -

(i) includes, or otherwise enables the servicer to identify, the name and
account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the
extent applicable, that the account is in error or provides sufficient detail
to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

QWRs relate to servicing of the loan.  Thayne v. Taylor, Bean & Whitaker Mortg. Corp.,

21 - OPINION & ORDER

No. 1:09-CV-141 TS, 2010 WL 3546929, at *3 (D. Utah Sept. 10, 2010) ("A QWR relates only to the 'servicing' of the loan"); Kelly v. U.S. Bank, No. CV-08-1421-AC, 2010 WL 4135028, at *13 (D. Or. July 29, 2010) (QWRs must relate to servicing of the loan), adopted 2010 WL 4116754 (D. Or. Oct. 14, 2010).

"Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). A written inquiry that does not relate to servicing is not a QWR.

Plaintiffs' allegation that they made a QWR upon Wells Fargo on or about June 16, 2009 is insufficient to establish that their communication with Wells Fargo constitutes a QWR because plaintiffs fail to attach a copy of their correspondence to the Complaint or to allege facts showing that the communication concerned servicing of the loan as defined by the statute. Plaintiffs' assertion that it sent a QWR is a conclusory allegation which does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal quotation omitted); Reynoso v. Paul Fin., LLC, No. 09-3225, 2009 WL 3833298, at *7 (N.D. Cal. Nov. 16, 2009) (dismissing without prejudice RESPA claim when the "Complaint completely fail[ed] to describe the qualified written request in any detail").

In response, plaintiffs argue that Wells Fargo has waived the right to object to any deficiencies in the QWR because, plaintiffs allege, it accepted the request as a QWR by responding to it and promising a substantive response after further research. In support, plaintiffs cite to various Oregon cases regarding the waiver of a contractual condition. Cases regarding the

waiver of a contractual condition do not support an argument that Wells Fargo could waive the statutory requirements of what constitutes a QWR. Plaintiffs provide no authority, and I have found none, regarding a waiver of the requirements of a QWR under the statute.

Additionally, the allegation that Wells Fargo waived any defects in the QWR when it responded to plaintiffs' inquiry assumes that what plaintiffs sent was capable of being construed as a QWR by Wells Fargo. That is, by alleging that Wells Fargo responded to the QWR by stating that it had received "same," plaintiffs rely on a conclusion that what plaintiffs sent was indeed a QWR. As explained above, there are insufficient facts pleaded in the Complaint to support this assertion.

I further agree with moving defendants regarding plaintiffs' allegations as to damages. RESPA requires that plaintiffs establish that any RESPA violation resulted in actual damages. 12 U.S.C. § 2605(f)(1). The damages provision of RESPA provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: . . . (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1).

Plaintiffs allege that as a result of the RESPA violations, Wells Fargo is liable to the Lettenmaiers for statutory damages of $1,000. Compl. at ¶ 109; see also Compl. at p. 17 (prayer regarding RESPA claim seeks a judgment for statutory damages). As the statute makes plain, statutory damages are allowed as "additional" damages to the actual damages, and only upon the finding of a pattern or practice of noncompliance. E.g., Reynoso, 2009 WL 3833298, at *7

(section 2605(f) requires a showing of pecuniary damages in order to state a claim); <u>Hutchinson v. Del Savings Bank, FSB</u>, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages."); <u>Cortez v. Keystone Bank</u>, No. 98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000) (a claimant under 12 U.S.C. § 2605 must allege a pecuniary loss attributable to the alleged violation).

Plaintiffs argue that they have pleaded actual damages because they allege that they have experienced severe emotional distress, including nausea, headaches, sleeplessness, and depression.  Compl. at ¶ 86.  Even if emotional distress damages are considered "actual damages" under RESPA, <u>see</u> <u>Moon v. GMAC Mortg. Corp.</u>, 2009 WL 3185596, at *5  (W.D. Wash. Oct. 2 ,2009) (noting that courts have reach opposite conclusions as to whether RESPA permits recovery of emotional distress damages), plaintiffs' allegation regarding emotional distress damages appears in  the background section of their Complaint under the heading "The Eviction" and thus, is not reasonably construed as an allegation that Wells Fargo's alleged RESPA violation caused plaintiffs actual damages.  Accordingly, plaintiffs' allegations fail to allege the required actual damages suffered as a result of Wells Fargo's alleged RESPA violation.  The RESPA claim is dismissed.

IV.  FDCPA

Moving defendants move to dismiss the FDCPA claim on the basis that they are not "debt collectors" within the meaning of the statute.  Alternatively they argue that because the foreclosure was valid as a matter of law, plaintiffs fail to state an FDCPA claim.

Plaintiffs contend that Wells Fargo and FreddieMac violated the FDCPA by taking or threatening to take non-judicial action to "effect dispossession . . . of the property when there

[was] no present right to possession of the property claimed as collateral through an enforceable security interest."  Compl. at ¶ 111; see 15 U.S.C. § 1692f(6) (conduct violating the FDCPA includes "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]").

The nature of the claim as it pertains to FreddieMac is unclear.  FreddieMac was not the lender, the beneficiary, or the trustee under the Deed of Trust.  It was not a loan servicer.  It did not claim a right to possession of the property through enforcing a security interest.  Rather, it is the present owner of the property as a result of the foreclosure sale.  While plaintiffs allege that FreddieMac does not presently hold valid title to the property because, *inter alia*, it was not present at the foreclosure sale, it was not the actual purchaser at the foreclosure sale, and the Amended Trustee's Deed was recorded more than ten days after the sale, there is no dispute that FreddieMac played no role in the sale other than to purchase the property.  As such, I agree with moving defendants that there is no cognizable FDCPA claim under section 1692f(6) against FreddieMac.

As to Wells Fargo, moving defendants contend that as loan servicer, Wells Fargo is not a debt collector.  Cases uniformly hold that mortgage servicers are not debt collectors under the FDCPA.  E.g., Perry v. Stewart Title Co., 756 F.2d 1197, 1208 ("The legislative history of section 1692a(6) [defining debt collector] indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned"); Radford v. Wells Fargo Bank, No. 10-00767, 2011 WL 1833020, at *15 (D. Haw. May 13, 2011) (original lender, transferee Wells

Fargo, nominee MERS, and mortgage servicer are not "debt collectors" under FDCPA); Lai v. Quality Loan Serv. Corp, No. 10-2308, 2010 WL 3419179, at *2 (C.D. Cal Aug. 26, 2010) (lender's beneficiary MERS and servicing agent not debt collectors within FDCPA).

However, as stated in Perry, and as recently explained by Judge Clarke, mortgage servicers are not debt collectors only when the underlying loan is taken for servicing before the default. Memmott v. OneWest Bank, FSB, No. CV-10–3042–CL, 2011 WL 1560985, at *5 (D. Or. Feb. 9, 2011), adopted as modified, 2011 WL 1559298 (D. Or. Apr. 25, 2011).

Here, the record shows that the NODES was recorded in Clackamas County on December 4, 2009. Ex. 5 to French Decl. The NODES recites that the Lettenmaiers were in default on their obligations beginning August 1, 2009. Id. The record further shows that MERS assigned its interest to Wells Fargo on December 3, 2009, after the Lettenmaiers were in default. Ex. 3 to French Decl. Thus, the exception to the definition of debt collectors for loan servicers does not apply here.

While Wells Fargo calls itself a "loan servicer," plaintiffs allege that MERS purports to be the beneficiary of the Deed of Trust which then assigned the Note and Deed of Trust to Wells Fargo. Compl. at ¶¶ 12, 13. This suggests that Wells Fargo was more than a loan servicer and was an assignee of a beneficial interest in the property. Based on the assignment from MERS to Wells Fargo, Wells Fargo obtained the interest in the Deed of Trust once possessed by MERS. In the original Note, MERS was appointed as beneficiary to act as nominee for the lender. In deeds of trust appointing MERS as a lender's nominee, "MERS becomes the mortgagee of record [and] is listed as the grantee in the official records maintained at county register of deeds offices." Ringard-Guirma v. Bank of Am. Nat. Ass'n, No. CV-10-1065-PK, 2010 WL 3945476,

26 - OPINION & ORDER

at *4 (D. Or. Oct. 6, 2010) (internal quotation omitted).  As mortgagee, MERS is essentially the

creditor.  E.g., Gomez v. GMAC Mortg., LLC, Nos. 10-13287, 10-13288, 10-13442, 2010 WL

5625673, at *3  (E.D. Mich. Dec. 15, 2010) (mortgage documents established that MERS was

mortgagee, making it a creditor), adopted 2011 WL 202298 (E.D. Mich. Jan. 21, 2011).

 As with mortgage servicers, assignees of a creditor are not debt collectors if they obtained

the right to collect on a loan before it was in default.  E.g., Perry, 756 F.2d at 1208 (debt collector

does not include the assignee of a debt, as long as the debt was not in default at the time it was

assigned).

 However, even though Wells Fargo is not excepted from the definition of "debt

collector," I nonetheless conclude that dismissal of the FDCPA claim is required.   The only

alleged violation of the FDCPA recited in plaintiffs' Complaint is that defendants took or

threatened to take non-judicial action to effect dispossession of the property when defendants had

no present right to possess the property.  Compl. at ¶ 111.  The prior allegations in the Complaint

make clear that plaintiffs' theory of FDCPA liability is that because MERS never possessed a

valid beneficial interest in the property, its assignment to Wells Fargo was a nullity, and thus,

Wells Fargo lacked the right to initiate the foreclosure because it had no right in the property at

that time.  See Compl. at ¶¶ 72-75.

 The only way to read the allegations in support of the FDCPA claim is as an attack on the

title to the property.  Plaintiffs contend that defendants violated the FDCPA because defendants

used the non-judicial foreclosure process to dispossess plaintiffs of the property when defendants

had no right to do so because, according to plaintiffs, MERS never had any rights to the property

in the first place.  If MERS lacked an interest in the property, then the title finally acquired by

FreddieMac at the foreclosure sale was invalid because Wells Fargo did not obtain a valid

interest in the property via assignment from MERS.  Given this, plaintiffs' FDCPA claim is best

understood as nothing more than a collateral attack on the Judgment in the FED action which

already concluded that FreddieMac held valid title to the property.

I recognize that plaintiffs could not bring an FDCPA claim for damages as an affirmative

defense to the FED action.  Ordinarily, that would make claim preclusion inappropriate because

plaintiffs did not have the opportunity to litigate the claim in the earlier state court FED action.

But here, when the sole basis for the FDCPA claim is that defendants lacked a valid property

interest, the FDCPA claim is best viewed as a challenge to the title of the property, an issue

which was adjudicated, or could have been adjudicated, in state court.  In other words, the

FDCPA claim pivots on whether defendants had a valid property interest and that question was,

or could have been, litigated in state court.  Thus, I conclude that the FDCPA claim as it is

alleged in the Complaint in this case and based solely on a theory of invalid title, is precluded.

Regardless of whether Wells Fargo is a debt collector, the claim is dismissed.[5]

CONCLUSION

Moving defendants' motion to dismiss [39] is granted.  Other than the RESPA claim,

---

[5] Plaintiffs contend that my conclusion in the May 20, 2011 Opinion & Order that NWTS
was a debt collector for claims under 15 U.S.C. § 1692f(6), applies here.  My discussion here
regarding the preclusion of the FDCPA claim is independent of the defendants' status as debt
collectors and thus, the discussion of the debt collector issue in the May 20, 2011 Opinion &
Order is not relevant to my conclusion on the preclusion issue.  Moreover, NWTS did not raise
preclusion of the FDCPA claim in its motion.
      However, my conclusion on the preclusion issue here should similarly apply to the
FDCPA claim as against NWTS and thus, simultaneous with this Opinion and Order, I am filing
a Supplemental Opinion and Order regarding the FDCPA claim against NWTS and dismissing
that claim.

plaintiffs' claims are dismissed with prejudice.  The dismissal of the RESPA claim is without

prejudice.  Plaintiffs have seventeen (17) days from the date of this Opinion and Order to submit

an Amended Complaint on the RESPA claim, provided they can do so consistent with Federal

Rule of Civil Procedure 11.

IT IS SO ORDERED.

Dated this ___8th___ day of _August_____, 2011

_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

29 - OPINION & ORDER